IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MARTY COSBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:17-CV-278 |
| | ) |
| CLAIBORNE COUNTY BOARD of | ) |
| EDUCATION, | ) |
| SAM OWENS, and | ) |
| CONNIE HOLDWAY, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of defendants' motion for summary judgment. [Doc. 26]. Plaintiff has filed a response, and defendants have submitted a reply. [Docs. 35, 37]. Oral argument is unnecessary, and the motion is ripe for the court's determination.

Plaintiff has filed suit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that he was retaliated against by the defendants for his political affiliations, in violation of the First Amendment. Plaintiff asserts that defendants again retaliated against him for filing the instant suit. Plaintiff also raises numerous claims under Tennessee law, including violations of the Tennessee Human Rights Act ("THRA"), various torts, and violations of Tennessee statutory and constitutional law. For the reasons that follow, the motion will be granted and the case will be dismissed.

I.

*Background*

Plaintiff was employed by Claiborne County Schools from 1981 until 2016, during which time he worked as both a teacher and a principal at Forge Ridge Elementary School. [Doc. 35-1 at 1]. In May 2015, plaintiff was transferred from his position as principal at Forge Ridge to the position of co-principal at TNT Primary School. [Doc. 35-1 at 2]. Plaintiff alleges that Connie Holdway, the Director of Schools, transferred him to TNT Primary based on a false allegation that plaintiff had been insubordinate to her. [Doc. 35-1 at 2]. Instead, plaintiff alleges, Holdway transferred him because he supported Dennis Cook for county mayor in a political race against Jack Daniels in 2014. [Doc. 35-1 at 6-7]. Plaintiff states that, in March 2015, Holdway received a two-year extension to her contract as Director of Schools, which was voted on by the Claiborne County Board of Education members, including defendant Sam Owens and Brian Pendleton, both of whom were outspoken supporters of the Daniels campaign. [Doc. 35-1 at 7]. Owens voted in favor of Holdway's contract extension. [Doc. 27-10 at 33]. Plaintiff further alleges that Owens had been appointed financial director, and the county mayor votes on such appointment. [Doc. 35-1 at 7].

Plaintiff alleges that his transfer would have resulted in an additional 44 miles of travel per day.[1] [Doc. 35-1 at 3]. Plaintiff did not suffer any reduction of salary from his

---

[1] Of note, plaintiff did not ever travel this distance, because it is undisputed that, after being transferred, plaintiff took the full 2015-2016 school year off, using sick leave, and thereafter retired.

2

transfer, but alleges that he suffered humiliation, embarrassment, and emotional distress as a result of being moved from the school where he had devoted his entire professional career. [Doc. 35-1 at 9-10]. Plaintiff alleges that it was a known fact in the community that principals in Claiborne County are not transferred unless they are being punished, and thus, his transfer indicated to the community that he had done something wrong. [Doc. 35-1 at 11].

Holdway is a resident of Hamblen County, but her relatives in Claiborne County supported the Cook campaign. [Doc. 27-2 at 2; Doc. 27-9 at 4]. Holdway stated that plaintiff had been insubordinate to her with respect to a literacy program, but he was transferred to TNT Primary for other reasons. [Doc.27-2 at 2]. Specifically, Holdway stated that she transferred plaintiff because Forge Ridge was performing poorly on state-mandated tests, whereas TNT Primary was performing at a higher level, and would benefit from the plaintiff's nurturing attitude to younger children. [Doc. 27-2 at 2]. Holdway stated that she never spoke to Owens about transferring plaintiff. [Doc. 27-9 at 17]. Prior to transferring plaintiff to TNT Primary, Holdway talked to Karen Clark, the principal at H.Y. Livesay Middle School about whether she was interested in taking the principal position at Forge Ridge. [Doc. 27-9 at 22; Doc. 35-5 at 5-6].

Owens is the finance director for Claiborne County and served as a member of the Claiborne County Board of Education from 1998 until 2016. [Doc. 27-3 at 1; Doc. 27-10 at 4]. Owens stated that he had never had any involvement or influence in plaintiff's employment. [Doc. 27-3 at 1]. Owens also stated that he never threatened plaintiff concerning any political position he may have taken. [Doc. 27-3 at 2]. In 2014, Owens

3

supported Daniels in his reelection bid for county mayor. [Doc. 27-10 at 9]. Owens denied telling plaintiff that he was going to have to vote for Daniels for mayor, or that Owens's job as finance director was at stake if Daniels did not win the election. [Doc. 27-10 at 9-10]. Owens stated that he was not after plaintiff's job, did not want him fired, and did not make any statements to that effect. [Doc. 27-10 at 24].

Michael Cosby, plaintiff's brother, alleges that he witnessed Owens make threats against the plaintiff, specifically stating that plaintiff was "on the wrong side" and "will regret this," with regard to plaintiff's support of Cook for county mayor. [Doc. 35-3 at 1-2]. Michael Cosby also alleges that he witnessed Owens stating to the plaintiff: "Your family needs to get on the right side and support Jack Daniels." [Doc. 35-3 at 3].

Thomas Zachary, the principal of Clairfield Elementary School, stated that Owens had told him that "a little bit of humiliation for Mr. Cosby would be good for him," but did not specifically say that he wanted to humiliate plaintiff. [Doc. 35-6 at 4-5]. Owens also told Zachary that plaintiff had not supported the candidate that plaintiff had told Owens he would, specifically, Daniels. [Doc. 35-6 at 5, 7].

After plaintiff was transferred, the school board ordered an audit on Forge Ridge, which resulted in a cost of around $30,000. [Doc. 27-9 at 8-9]. The audit revealed that there were books and a dissertation program purchased with school activity funds that appeared to be purchased for personal use.[2] [Doc. 27-9 at 31]. Dale "Trent" Williams

---

[2] Although unclear from the evidence provided, it appears that this audit finding was not released to the public, based on plaintiff's counsel's questioning which indicated that no results of the audit had been publicly released. [*See* Doc. 27-9 at 31].

4

previously worked at Claiborne County Schools as an assistant to the director of schools, a principal, and a teacher. [Doc. 35-4 at 1]. Williams alleges that, after plaintiff's transfer, Holdway told him that plaintiff would be convicted based on irregular audit findings by the Tennessee Bureau of Investigation. [Doc. 35-4 at 3].

II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.

1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### III.

*Analysis*

**A. First Amendment Retaliation**

Section 1983 permits a cause of action for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

To establish a First Amendment retaliation claim,[3] a plaintiff must prove three elements:

---

[3] Plaintiff cites to 42 U.S.C. §§ 1983, 1985, and 1986 as the statutory basis for his federal claims. [Doc. 1-2 at 277]. In their motion for summary judgment, the defendants contend that plaintiff's §§ 1985 and 1986 claims are not supported by the facts raised in the amended complaint. [Doc. 27 at 7]. Regardless of what statutory basis is appropriate for defendant's First Amendment retaliation claims, as discussed below, no genuine issue of material fact exists as to such claims.

6

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) ("*Leary I*"). If the plaintiff makes this showing, the burden "shifts to the defendant to show by a preponderance of the evidence that it would have taken the same action" absent the protected conduct. *Id.* (internal quotation marks omitted).

Plaintiff essentially alleges two instances of First Amendment retaliation: (1) his transfer to a position of co-principal at TNT Primary, which he asserts was in response to his support of Cook, as opposed to Daniels, in the Claiborne County mayoral election; and (2) the school district's audit of his activity as principal of Forge Ridge, after his retirement, which he asserts was in response to his filing the instant lawsuit. As to his second claim, plaintiff does not specifically label his claim as First Amendment retaliation, or anything else for that matter. However, this Court will construe the claim as a second claim for First Amendment retaliation. Moreover, although none of the parties address this second claim in their arguments regarding summary judgment, this Court will interpret the defendants' request for dismissal of the case as a request for summary judgment on this second claim of First Amendment retaliation as well.

1. **Protected Activity**

"The right of political association is a well established right under the First Amendment for political belief and association constitute the core of those activities

7

protected by the First Amendment. Support of a political candidate falls within the scope of the right of political association." *Sowards v. Loudon Cty*, 203 F.3d 426, 431 (6th Cir. 2000) (internal quotation marks and citations omitted). Moreover, "[t]he filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment." *Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010). Accordingly, as to each of his First Amendment retaliation claims, plaintiff engaged in generally protected activity, namely, supporting Cook in the county mayoral election and filing the instant lawsuit.

If the plaintiff is a public employee, he must make additional showings to demonstrate that his conduct was protected, by showing: (1) that his speech touched on matters of public concern; and (2) that his interest in commenting upon matters of public concern outweighed the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Leary I*, 228 F.3d at 208. "In general, speech involves matters of public concern when it involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (quoting *McKingly v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

The plaintiff was only a public employee at the time of his first protected activity, supporting Cook for county mayor, and thus, plaintiff need not make this additional showing as to his second protected activity, the filing of the instant lawsuit. Plaintiff's support for a candidate for county mayor clearly touched on a matter of public concern, namely, the mayoral election. Additionally, plaintiff's interest in commenting on the

8

mayoral election outweighed any interest of the state in promoting the efficiency of public servants. Political affiliation is not a constitutionally permissible ground for state employment decisions, with the exception of certain senior positions reserved for political appointments by the executive branch. *Eckerman*, 636 F.3d at 208. Accordingly, plaintiff has shown that his activity, as to each of his First Amendment retaliation claims, was protected.

   **2. Adverse Action**

An official action is "adverse" if it could "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (internal quotation marks omitted). Whether a retaliatory action is severe enough to deter a person of ordinary firmness from exercising his rights is a question of fact. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). However, if a plaintiff's alleged adverse action is "inconsequential," resulting in only a "de minimis injury," the claim may properly be dismissed as a matter of law. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012).

An involuntary transfer from one job to another, even absent a grade or salary change, is an action that would likely chill a person of ordinary firmness from engaging in constitutionally protected activity. *Leary v. Daeschner*, 349 F.3d 888, 901 (6th Cir. 2003) ("*Leary II*"). However, the Sixth Circuit has held that performing an improper database search under the plaintiff's name, without information as to what, if any, information was discovered in such search, was insufficient to constitute an adverse action. *Wurzelbacher*, 675 F.3d at 584. "The mere presence of an intelligence data-gathering activity does not

give rise to constitutional liability." *Center for Bio-Ethical Reform, Inc., v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (internal quotation marks omitted).

While embarrassment and humiliation may be sufficient to establish a First Amendment retaliation claim, not all allegations of emotional injury are sufficient to constitute adverse action. *Wurzelbacher*, 675 F.3d at 584. While the release of humiliating details of a plaintiff's rape and false accusations against a lawyer filed by a judge have been deemed adverse actions, based on embarrassment or humiliation, the revelation of a traumatic childhood incident in an investigative report did not rise to the same level under the First Amendment. *Mattox v. City of Forest Park*, 183 F.3d 515, 522-23 (6th Cir. 1999) (citing *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) and *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)). Additionally, "generalized statements about the effect of an action on [one's] character and reputation, about being held up to ridicule, contempt, shame, and disgrace, and about the effect on [one's] respectability, comfort, and position in society," without a more concrete allegation of personal injury, are insufficient to meet the constitutional threshold required for a First Amendment retaliation claim. *Mattox*, 183 F.3d at 523 (internal quotation marks omitted).

As to plaintiff's first claim, a genuine issue of material fact exists as to whether plaintiff suffered an adverse action. Plaintiff's alleged adverse action is that he was transferred from his position as principal at Forge Ridge, where he had spent the entirety of his career, to the position of co-principal at TNT Primary, which resulted in (1) an additional 44 miles per day in his commute, and (2) embarrassment from the implication that he had been transferred for wrongdoing. (Doc. 1-2 at 269, 273; Doc. 35-1 at 9-10).

Although plaintiff's allegations of embarrassment alone may not be sufficient to establish an adverse action, considering the totality of the circumstances, a genuine issue of material fact exists as to whether his involuntary transfer to TNT Primary constituted an adverse action. *See Leary II*, 349 F.3d at 901.

However, as to plaintiff's second claim, no genuine issue of material fact exists as to whether plaintiff suffered an adverse action in retaliation for filing the instant lawsuit. In his amended complaint, plaintiff alleges that, in response to his lawsuit, the defendants "retaliated against the Plaintiff again, employing the services of an auditor to make it appear that the Plaintiff was guilty of some type of wrongdoing[.]" [Doc. 1-2 at 277]. He asserts that the audit was for the purpose of causing him "additional stress and injury, to further cause humiliation and embarrassment . . . and to cause additional emotional anguish[.]" [*Id.* at 278]. Although the evidence does not specifically address the results of the audit, during his deposition of Holdway, plaintiff's counsel indicated that no results of the audit were publicly released. [Doc. 27-9 at 31]. This audit, from which no findings were publicly released, is akin to an "intelligence data-gathering" activity, which does not constitute an adverse action. *See Napolitano*, 648 F.3d at 375. Moreover, although plaintiff alleges that he suffered humiliation as a result of the audit, the release of the fact that an audit was being conducted, without the release of any negative findings from the audit, does not rise to the level of those situations where resulting embarrassment has rendered an action sufficiently chilling to a person of ordinary firmness. *See Mattox*, 183 F.3d at 522-23. Accordingly, the alleged adverse action for plaintiff's second claim, the audit, was, at most, a *de minimis* injury, and therefore, this claim may properly be dismissed

as a matter of law. *See Wurzelbacher*, 675 F.3d at 584. Therefore, the Court will grant defendants' motion for summary judgment as to plaintiff's second claim of First Amendment retaliation.

### 3. Causal Connection

The third element of a First Amendment retaliation claim requires a plaintiff to prove "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d at 399. "When assessing motive in the context of a summary judgment motion, '[B]are allegations of malice [do] not suffice to establish a constitutional claim.'" *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). To show a causal connection, the plaintiff must demonstrate "that the speech at issue represented a substantial or motivating factor in the adverse employment action." *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). Specifically, he must point to specific, nonconclusory allegations reasonably linking his speech to the adverse action. *Id.*

"[P]roof of an official's retaliatory intent rarely will be supported by direct evidence of such intent." *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010) (internal quotation marks omitted). Circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment. *Id.* "Proof of temporal proximity between the protected activity and the adverse employment action 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of causal connection." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Randolph v. Ohio Dep't of Youth Servs*, 453 F.3d 724, 737 (6th Cir. 2006)). However, evidence other than that of a close temporal

12

proximity is required to permit an inference of retaliatory motive. *Holzemer*, 621 F.3d at 526.

Plaintiff asserts that a close temporal proximity exists between the mayoral election and his transfer. However, the record reflects that at least a 9-month period elapsed between Daniels's election as county mayor, in August 2014, and plaintiff's transfer, in May 2015. Even taking into consideration plaintiff's assertion that Holdway had begun an attempt to transfer him in March 2015, a significant time had elapsed from the time of Daniels's election, and even more so from the time of plaintiff's pre-election public support of Daniels's opponent.

Regardless, even assuming a temporal proximity between the mayoral election and plaintiff's transfer, plaintiff has not submitted additional evidence that would permit an inference of retaliatory motive. The plaintiff's only assertion that the decisionmaker in his transfer, Holdway, had any retaliatory motive against him for his support of Daniels's opponent in the mayoral election is his speculation that Holdway was somehow influenced by Owens, because Owens, as a member of the Claiborne County Board of Education, had voted in favor of a two-year extension on Holdway's contract as Director of Schools in March 2015, and was in the position to make recommendations for expenditures. [Doc. 35 at 8; Doc. 35-1 at 7-8]. However, mere speculation is insufficient to meet the plaintiff's burden at the summary judgment stage. *See Bell*, 351 F.3d at 253.

In his affidavit, plaintiff makes the bare assertion that "Ms. Holdway transferred me because of my support for Ms. Cook as Mayor in a political race against Jack Daniels, the current County Mayor." [Doc. 35-1 at 6]. Plaintiff then states that "Holdway, as Director

of Claiborne County Schools, is accountable to the Claiborne County Board of Education members[.]" [*Id.* at 7]. He states that "[i]n March of 2015 . . . Holdway[] received a two-year extension to her contract as Director of Schools, which was voted on by the Claiborne County Board of Education members, including . . . Owens, and Brian Pendleton, who also were outspoken supporters of Jack Daniels." Plaintiff continues on to say that Owens "had also been appointed Financial Director by a committee of five (5) members consisting of the Director of Schools . . . [and] the County Mayor[.]" Finally, the plaintiff states that "the Finance Director would have been in the position to have made recommendations for expenditures for the Claiborne County Board of Education, for which . . . Holdway[] was the director." [*Id.*]. Plaintiff thus implicates that Owens influenced Holdway's decision to transfer plaintiff, but does not actually allege that such occurred.

In her affidavit, Holdway stated that she did not vote in the mayoral election for Claiborne County, because she is a resident of Hamblen County. [Doc. 27-2 at 2; Doc. 27-9 at 4]. She stated that her siblings who live in Claiborne County supported and campaigned for Dennis Cook, the same candidate that the plaintiff alleges to have supported. Holdway denied that plaintiff was transferred because he supported Cook in the 2014 mayoral election. [*Id.*]. During her deposition, Holdway stated that she had not talked to Owens about moving or transferring the plaintiff, because it was not Owens's decision. [Doc. 27-9 at 17]. Likewise, in his affidavit, Owens denied having any involvement or influence in the plaintiff's employment. [Doc. 27-3 at 1].

Plaintiff's allegations that Owens could have held influence over Holdway by way of his position as a member of the school board and the finance director, combined with

14

his bare assertion that Holdway transferred him because of his support for Daniels's opponent in the 2014 mayoral election, does not rise to the level of a "specific, nonconclusory allegation[] reasonably linking" his political association with his transfer. *See Rodgers*, 344 F.3d at 602. Other than his self-serving speculation about Owens's influence on Holdway, plaintiff has presented no evidence that Owens was in any way involved in the decision to transfer plaintiff or that Holdway would have transferred him because of his political association with Cook. Accordingly, because plaintiff has not established that there was a causal connection between his political association in the 2014 county mayoral election and his transfer from Forge Ridge to TNT Primary, the Court will grant the defendants' motion for summary judgment on this claim of First Amendment retaliation.

### B. Supplemental Jurisdiction

All that remains for consideration in this action are the pendent state law claims that the plaintiff has raised, including, *inter alia*, claims of tortious interference with an employment relationship, age discrimination under the THRA, official misconduct, outrageous conduct, false light, violations of various state law statutes, and violations of the Tennessee Constitution. Pursuant to 28 U.S.C. § 1367(c)(2), a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if "the district court has dismissed all claims over which it has original jurisdiction." That being the case here, the court will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

IV.

*Conclusion*

Accordingly, for the reasons stated herein, defendant's motion for summary judgment will be **GRANTED**. The court will **DECLINE** to exercise supplemental jurisdiction over plaintiff's pendent state law claims. This action will be **DISMISSED**. An order consistent with this opinion will be entered.

s/ Leon Jordan  
United States District Judge
